Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
David J. Harris, Jr. (SBN 286204)
djh@classactionlaw.com
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1260
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

*Counsel for Plaintiffs, the Putative Class
and County Subclass*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR PORTALUPPI and CARMEN PORTALUPPI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FortiFi Financial, Inc. (f/k/a Energy Efficient Equity, Inc.), and the County of Los Angeles,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Hector Portaluppi and Carmen Portaluppi bring this class action individually, and on behalf of all other persons who have incurred property tax liens or assessments on their residential properties located in California, which were originated, approved, and reported to governmental authorities by Defendant FortiFi Financial, Inc. (formerly known as Energy Efficient Equity, Inc.), under California's Property Assessed Clean Energy ("PACE") Program (the "Class").  Also included within the Class is a subclass consisting of all Class members whose affected properties were or are located within the County of Los Angeles (the "County Subclass").  Plaintiffs hereby make the following allegations based on the investigation of their counsel, and based upon personal knowledge as to themselves and their own acts and experiences.  Plaintiffs and their counsel believe that substantial, additional evidentiary support for the allegations set forth herein will be revealed after a reasonable opportunity for discovery.

## INTRODUCTION

1.    Mr. and Mrs. Portaluppi are a married couple in their seventies, residing just north of Los Angeles.

2.    In October 2018, they were enjoying a quiet day at their humble home.  Two female strangers came to their front door and greeted them.  Speaking fluently in Spanish, they identified themselves as being with a company called "Eco Technology" ("Eco"), which specialized in green-energy home improvements.

3.    The women explained that Eco was a State-licensed contractor working under a government program.  They said that under this program, the government would cover the cost of certain green-energy improvements for low income homeowners.  Earning the Portaluppis' trust, they pitched this program as furthering the State's environmental policies, as well as helping qualified homeowners save money on their energy bills.  The Portaluppis asked the two women some questions, and being the charismatic salespeople that they were, they had some answers.

1

CLASS  ACTION  COMPLAINT

4. Mr. and Mrs. Portaluppi eventually allowed Eco to do a free walk-through of their home, to evaluate potential green-energy improvements that might be eligible under this government program. Soon after conducting the walk-through, Eco came back with a list of improvements that would qualify: energy efficient appliance installations, a replacement air duct, and the like. Eco explained that if the Portaluppis qualified under the government's program, Eco would perform these green-energy upgrades free of charge, and the government would reimburse Eco for the cost.

5. Eco repeatedly assured the Portaluppis that their home improvements would be free of charge to them, so long as they qualified for the government's program. Relying on Eco's representations, the Portaluppis provided Eco with some of their personally identifying information ("PII") to confirm their eligibility.

6. Eco came back and told the Portaluppis that they had qualified. Eco and the Portaluppis set up a date for Eco to come back and perform the approved upgrades. Eco once again reassured the Portaluppis that their home improvements would be free of charge to them. On that condition, the Portaluppis orally agreed to allow Eco to perform its work.

7. The Portaluppis never signed anything, and would never have allowed Eco to perform any of this work if they had known that they would be charged substantial amounts of money. Their combined annual income, mostly from Social Security, was under $38,000. There was no slack in their budget for green-energy home improvement projects. But based on Eco's repeated and convincing assurances of free green-energy upgrades, the Portaluppis orally agreed to allow Eco to do the work, and bill *the government* under this purported green-energy program.

8. Later, Eco came back and made some apparent green-energy improvements to the Portaluppis' home. True to their word, Eco's people did not charge the Portaluppis anything. Eco's people performed the work, thanked the Portaluppis for their business, and then left. The Portaluppis believed they had

2

CLASS ACTION COMPLAINT

1  modestly benefited from the government's green-energy program, and that this
2  marked the end of their story.

3  9. Unfortunately, this was only the beginning of their story. A few months
4  later, Mr. and Mrs. Portaluppi received their semi-annual property tax bill from
5  Defendant County of Los Angeles ("County"). Their property tax bill had suddenly
6  gone from about $1,431.84 to $8,815.74 annually. Upon further inquiry, the
7  Portaluppis learned that they had a $69,003, secured property-tax assessment on their
8  home, accruing interest at a rate of nearly 8% annually. Over time, including accrued
9  interest and fees, the Portaluppis would have to pay the County *$147,929* over and
10 above their normal property taxes: on a house with about a half-million-dollar market
11 value.

12 10. The Portaluppis never agreed to this. The Portaluppis never knew that
13 *any* increase in their property taxes was possible, much less a six-figure increase.
14 Upon further inquiry of the County and of Defendant FortiFi Financial, Inc. (the
15 County's private contractor), the Portaluppis realized that they had been completely
16 scammed and even impersonated by Eco. The Portaluppis realized that they had been
17 left holding a property-tax bag they never agreed to carry, and could not *possibly* carry
18 based on their ~$38,000 of annual income.

19 11. The Portaluppis contacted their County's property tax authority to tell
20 their story and seek relief. The Portaluppis could show that Eco had overtly forged
21 their electronic signatures on a secured loan application they never knew about. They
22 could show that the phony phone numbers and email addresses on that forged loan
23 application *were not theirs*. They could show that their annual income was never
24 anywhere near the *$160,000* of annual income falsely stated on Eco's forged loan

25
26
27
28

CLASS ACTION COMPLAINT

application.  The Portaluppis could also show that non-party Eco was nothing but a fly-by-night, recidivist criminal organization with international operations.[1]

12.    Los Angeles County officials, however, did not need the Portaluppis to tell them that.  In fact, the County has long known that Eco, and many other State-licensed "contractors," were running exactly the same scam throughout the County and throughout the State of California.  *See, e.g.,* https://dbo.ca.gov/wp-content/uploads/sites/296/2020/05/D-R-ECO-TECH.pdf (last visited July 16, 2020). In fact, the County became so aware of the pervasiveness of these scams that the County chose to remove itself entirely from California's "Property Assessed Clean Energy" ("PACE") program, because the County concluded that it could not protect its residents from rampant scams by Eco and many other criminal "contractors."  *See, e.g.,* http://pace.lacounty.gov/ (last visited July 16, 2020).

13.    Nevertheless, when the distressed Portaluppis contacted their County as the clear cut crime victims that they are, the County told the Portaluppis that there was nothing it could do about the forged "PACE assessments" against their humble home. In fact, after hearing the Portaluppis out, the County told them to pay their forged assessments, or face penalties and eventually a foreclosure and tax sale of their primary residence.

14.    The Portaluppis are not alone.  There are at least hundreds, if not thousands, of Californians who suffered substantially similar, fraudulent scams at the hands of fly-by-night, criminal "contractors" going door to door.  Yet the County and its private-sector contractors (including, but not limited to, Defendant FortiFi

---

[1]  *See, e.g.,* http://www.ecotechnology.us/about-us/ (last visited July 16, 2020); http://www.ecotechnology.ca/ (last visited July 16, 2020); https://www.consumerbewarelist.mgs.gov.on.ca/en/cbl/businessdetail/9d162206-e5e8-e811-86e7-00155d192942 (last visited July 16, 2020) (reflecting numerous fraud convictions in Canadian courts).

CLASS  ACTION  COMPLAINT

Financial, Inc.) *continue* to recklessly charge, collect and enforce enormous property-tax assessments and liens against vulnerable residents. Defendants knowingly and recklessly continue these unlawful collections, fully aware that many (if not substantially all) of these "PACE loans" were fraudulently submitted to them without homeowners' knowledge or consent.

15. This is not merely unjust — not merely unlawful under the California "PACE" statute itself — but also flatly unreasonable and unconstitutional conduct by the County of Los Angeles.

16. This civil action is not about chasing down Eco or any other fly-by-night, criminal contractors operating out of foreign countries. That would ultimately prove to be a waste of judicial resources in a private action such as this. This case is about the County and the County's private contractor knowingly, recklessly, unreasonably, unlawfully, and unconstitutionally taking residents' money and real property, while knowing full well they have no legal authority to do so.

17. Defendants' conduct is clearly unlawful, on many levels, and yet it continues unabated against numerous Californians like the Portaluppis. Plaintiffs and the Class demand financial, injunctive and declaratory relief from this Court.

### JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as Plaintiffs reside within this district, and a substantial part of the events and property giving rise to the claims presented herein are located within this district. In addition, Defendant FortiFi Financial, Inc. purportedly has its principal place of business in this district, and Defendant County of Los Angeles is located within this district. Many of the acts that constitute the violations of law complained of herein have occurred and are occurring in substantial part in this District.

5

CLASS  ACTION  COMPLAINT

**PARTIES**

20.    Plaintiffs Hector and Carmen Portaluppi are citizens of the State of California and residents of the County of Los Angeles.

21.    Defendant FortiFi Financial, Inc. ("FortiFi"), known until recently as "Energy Efficient Equity, Inc." (or "E3"), is a company incorporated in the State of Delaware, having its principal place of business within this District.  Throughout the relevant period, FortiFi/E3 was a "program administrator" under contract with the County of Los Angeles and other municipal entities throughout California.

22.    Defendant County of Los Angeles ("County") is one of the State of California's original 27 counties, and one of the largest counties in the United States. The County assesses, collects and enforces residential property tax obligations against its residents in the ordinary course of the County's operations.

**SUBSTANTIVE ALLEGATIONS**

**Background: California's Property Assessed Clean Energy ("PACE") Program**

23.    California's Property Assessed Clean Energy Program ("PACE" or "the Program") is a relatively young statutory scheme that allows qualifying homeowners to finance green-energy upgrades to their homes.  *See generally* California Streets and Highways Code ("SHC") §§ 5898.10, *et eq.*, and §§ 5900, *et seq.*  Under the Program, if homeowners agree to the upgrades, and to the statutorily created financing, then the homeowners must pay for their upgrades through large, high-interest property tax assessments ("PACE loans" or "PACE assessments").  Such "PACE assessments" are required to be *voluntary*, secured liens on the residential real estate, senior to any mortgage debt.  A homeowner's failure to pay off their *voluntary* PACE assessments results in financial penalties, and ultimately a tax foreclosure on their home.

24.    Generally speaking, the California PACE program works like this.  State-licensed, home improvement contractors go door to door throughout the State, offering green-energy improvements to homeowners for no money down.  If the homeowner

6

agrees, the contractor works with the homeowner to submit a voluntary "PACE loan" application.

25.    The PACE loan application is submitted to one of a handful of Program "Administrators," such as Defendant FortiFi.   These administrators are essentially private lenders, who contract with local governments like the County to help finance and operate the Program.   Administrators process the PACE loan applications, and if approved, inform the contractor ***and the homeowner*** of the loan approval.

26.    The contractor performs the approved work on the home, and the homeowner signs and submits a confirmation form to the Administrator: showing what work was done, at what cost.   If the confirmation form is approved by the Administrator, the Administrator disburses funds to the contractor for performing the work.   In effect, the contractors are paid immediately by the Administrator, and the Administrator then records the homeowner's debt with the County.

27.    The County then uses its governmental powers to collect the costs from homeowners, and then pay back its Administrators (plus interest and fees).

28.    The County effectively assigns to the Administrator the County's rights to receive the cash flows from homeowners' PACE assessments.   The County bills and collects these PACE assessments from homeowners—plus fees, plus 7-9% annualized interest—as part of the homeowners' property tax bills.   The County collects these large, high-interest PACE assessments from homeowners over time, and passes its collections back to the administrators, who originally paid the contractors.

29.    *California's statutory PACE Program does not allow any PACE assessment to be levied against any homeowner without that homeowner's "voluntary" agreement to the PACE assessment*.

30.    The problem with California's PACE Program is that criminal organizations have discerned (if not lobbied the legislative and executive branches for) gaping statutory and administrative holes.   Career criminals have discerned that there

7

CLASS   ACTION   COMPLAINT

is substantially nothing stopping contractors from pocketing millions of dollars in cash (through fraud), if only contractors can get their hands on California homeowners' PII.

31.     The statutory PACE Program required no serious, homeowner identity or consent verification on the part of California's local governments or private Administrators.  So predictably, hundreds if not thousands of California homeowners have now been defrauded and **_easily_** impersonated by crooked, fly-by-night "contractors" like Eco, as soon as these contractors got their hands on residents' PII. Thanks to the PACE Program's gaping consumer-protection holes, victimized homeowners are now stuck with enormous, secured property tax assessments on their homes.  Victimized homeowners are getting no relief whatsoever from the County or from its private, fraud-ridden Administrators like Defendant FortiFi.

32.     Defendants are fully aware of all of this, yet they **_knowingly and recklessly_** continue to collect and enforce forged and fraudulent PACE assessments against California residents like the Portaluppis: without any proof that such assessments were ever "voluntary," and without so much as providing an evidentiary hearing or appeal process to evaluate whether a challenged assessment was "voluntary" in fact, as required by law.

33.     The message from these Defendants, to homeowners like the Portaluppis, has been clear: "pay your six-figure assessments, or give us your house."  This Court stands as Plaintiffs' last and best hope.

**Criminal Organizations Have Their Way With PACE Financing**

34.     Non-party Eco Technology, Inc. ("Eco") is an international, criminal organization that fraudulently (and easily) maintained a home-improvement contractor's license with the California State Licensing Board ("CSLB").

35.     At all relevant times, Eco was owned by two (purportedly) Canadian individuals (purportedly) named "Marija Popov" and "Norbertas Sinica."  Eco and its purported principles have repeatedly been convicted of fraud in Canadian courts.  *See,*

8

*e.g.,* https://www.consumerbewarelist.mgs.gov.on.ca/en/cbl/businessdetail/eeb4ca8e-d237-e711-8d08-00155d3b69ab (last visited July 21, 2020). Eco was and remains organized by these career scam-artists for the primary purpose of committing fraud against vulnerable residents of California and other States.

36. Since 2017 or earlier, Eco and other criminal-contractor personnel ("Criminal-Contractors") went door-to-door throughout the County and State defrauding and ultimately impersonating innocent residents like Plaintiffs.

37. Eco showed up at Plaintiffs' doorstep, and offered them free green-energy improvements, which Eco said would be paid for by the government. Eco's people said that they needed Plaintiffs' personally identifying information ("PII") to determine whether Plaintiffs would qualify for this free government program. At Eco's request, Plaintiffs provided Eco with some of their PII, in hopes of qualifying for "free" green-energy improvements.

38. Eco then used Plaintiffs' PII to **forge** and **falsify** PACE loan applications on their behalf, **without their knowledge or consent**. On October 25, 2018, Eco secretly submitted its forged and falsified PACE loan applications to PACE Administrator FortiFi Financial, Inc. (known until recently as "Energy Efficient Equity, Inc." or "E3").

39. Eco's forged PACE loan applications included fake phone numbers, email addresses, and annual income amounts for Plaintiffs. The forged PACE applications also contained fake electronic signatures **that were not Plaintiffs' signatures**. Plaintiffs knew nothing about the existence of those forged documents or their content, until after they were hit with enormous property-tax assessments, and inquired as to why this was happening.

40. As Defendants have long known, Eco did the same thing to many other Class members, and FortiFi/E3 approved all (or substantially all) of the forged and fraudulent PACE loan applications it received from Eco. *See, e.g.,*

9

https://dbo.ca.gov/wp-content/uploads/sites/296/2020/05/D-R-ECO-TECH.pdf    (last
visited August 21, 2020).  After obtaining FortiFi/E3's approval of the forged PACE
applications, Eco and other Criminal-Contractors sometimes performed at least some
of the "applied-for" work at Plaintiffs' and other Class members' homes.  *Id.*

41.    Eco then used Plaintiffs' PII a second time — again without Plaintiffs'
knowledge or consent — to forge, falsify, and submit to Defendant FortiFi/E3 some
*obviously* fraudulent "confirmation" documents, purporting to show that Eco had
completed the previously approved work ("Completion Certificates").  Eco-related
personnel proceeded to impersonate Plaintiffs by phone, orally "confirming"
completion of the approved work, and (pretending to be the Portaluppis) falsely
affirming Plaintiffs' knowledge of and consent to the corresponding PACE
assessments.

**FortiFi Knowingly Participates in the Conduct of Contractors' Criminality**

42.    FortiFi/E3 approved Plaintiffs' and other Class members' PACE
applications, while actually knowing or deliberately disregarding that such
applications were forged or otherwise clearly fraudulent.

43.    FortiFi/E3 also approved Plaintiffs' and other Class members' PACE
Completion Certificates, while actually knowing or deliberately disregarding that such
Completion Certificates were forged or otherwise obviously fraudulent.

44.    FortiFi/E3 paid nearly $70,000 directly to Eco, purportedly on behalf of
Plaintiffs pursuant to the PACE Program, while actually knowing or deliberately
disregarding the true fact that Eco's submissions were forged or otherwise obviously
fraudulent.

45.    By way of example only, energy-efficient central air conditioners
typically cost between $3,000 and $7,000 (or less), including installation, depending
on the specifications.  Yet based on Eco's forged PACE application and Completion
Certificate naming the Plaintiffs here, FortiFi approved and paid Eco ***$28,500*** for

CLASS   ACTION   COMPLAINT

purportedly installing a single "Central Air Conditioner." FortiFi reviewed, but made no inquiry whatsoever into, the facial unreasonableness of that charge.

46. Similarly, high-quality, energy-efficient hot water heaters typically cost between $800 and $1,500. Yet based on Eco's forged PACE application and Completion Certificate naming Plaintiffs, FortiFi approved and paid Eco **$11,000** for installing a "Water Heater." FortiFi reviewed, but made no inquiry whatsoever, into the facial unreasonableness of that charge.

47. Upon paying millions if not tens of millions of dollars to Eco and other clearly Criminal-Contractors, Defendant FortiFi/E3 proceeded to falsely report to the County that Plaintiffs and other Class members agreed to have outrageous dollar amounts assessed against their homes as additional property taxes, plus fees and interest. FortiFi did this despite knowing that Plaintiffs and other Class members, in fact, made no such agreements.

48. For starters, Plaintiffs (with some help from their daughter and son-in-law) repeatedly complained to FortiFi between October and December 2019. They spoke with purported customer service reps, a purported "compliance manager," and a purported "senior vice president" at FortiFi/E3. Plaintiffs repeatedly told their stories to FortiFi's personnel, but were given nothing but the runaround and purported copies of Eco's forged and clearly fraudulent electronic submissions impersonating Plaintiffs.

49. FortiFi has done substantially nothing to inform the County (or the other California municipalities with which FortiFi contracts) of the known fact that Plaintiffs' and other Class members' "PACE loans" were processed, approved, reported, and recorded with the County and other municipalities **without homeowners' knowledge or consent**.

CLASS  ACTION  COMPLAINT

**The County Continues To Assess, Collect And Enforce Forged PACE Loans**
**Without Any Process, While Knowing The Pervasiveness Of These Frauds**

50.    Defendant County of Los Angeles has long been aware that the California PACE program is replete with Criminal-Contractor fraud.  The County's knowledge is based upon, *inter alia*: (a) the State of California's investigative findings; (b) the County's own factual findings; (c) the City of Los Angeles's civil prosecutions; and (d) several other civil actions involving PACE contractors and administrators.

51.    Specifically, the State of California's Department of Business Oversight ("DBO"), which is part of the State's Business, Consumer Services and Housing Agency, reviewed 22 homeowner complaints regarding ***alleged*** "contracts entered between homeowners and the PACE Administrator where Eco Tech[nologies] served as the PACE solicitor." *See, e.g.,* https://dbo.ca.gov/wp-content/uploads/sites/296/2020/05/D-R-ECO-TECH.pdf (last visited August 21, 2020) at ¶¶4-6.  All 22 complaints reviewed by the DBO were limited to Los Angeles County, and to one of several known, Criminal-Contractors: Eco.  *Id.*   The DBO made the following factual findings, just for those 22 complaints alone:

> The complaints reveal that the Eco Tech solicitor agent would ask the homeowner for personal financial information such as tax statements, paycheck stubs, and driver's license in order to determine if the homeowners qualified for the "free government program." After taking a picture of the documents on a cell phone or iPad, the employee would leave. Then, the PACE Administrator would receive an application for PACE financing from the homeowner. All 22 complaints arise out of assessment contracts that were e-signed by DocuSign. In 20 of the 22 complaints, the homeowner denies ever signing the PACE financing contract between [the administrator] and the homeowner. In the two complaints where the homeowners do recall signing contracts on an iPad, the contracts were written in English, while the homeowners primarily speak Spanish.

> DBO has identified at least seven of the 22 complaints that allege the PACE financing contracts contain statements that the homeowners deny

12

CLASS  ACTION  COMPLAINT

making, and email address and/or phone number that they deny are attributed to them. The complaints imply that Eco Tech created email address and phone numbers in order to have the financing documents routed to them rather than the homeowner. The complainants also deny that they signed the financing documents that were returned to PA1. Additionally, several of the complainants allege that the voice on the recorded "welcome call" and/or "completion call" with that PACE Administrator is not their voice, but rather an impersonator.

*Id.*, ¶¶9-10.

These findings by the DBO match Plaintiffs' situation perfectly, yet neither the Defendant County nor Defendant FortiFi has taken any action whatsoever to remove these forged, unlawful, and involuntary PACE assessments from the County's tax rolls.

52.    Nor has the County allowed Plaintiffs or any other Class member ***any*** procedure to challenge the authenticity of their alleged PACE applications and Completion Certificates.  The County provides no administrative appeal procedure, and no evidentiary hearing.  Instead, the County simply taxes its victimized, low-income (and typically, racial minority) homeowners under threats of foreclosures, evictions and tax sales of their homes.

53.    The County has become so inundated with these types of PACE fraud complaints in recent years that the County elected to discontinue its participation in California's PACE program because the County itself concluded that it had failed — and would continue to fail — protecting its residents, like the Plaintiffs here. Nonetheless, the County has done nothing but knowingly continue to assess, collect and enforce these PACE assessments, which the County knows to be forged, fraudulent, and unlawful under the PACE program itself.

**CLASS ALLEGATIONS**

54.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of themselves and all other persons who have incurred property tax liens or assessments on their residential properties

13

located in California, which were originated, approved, and reported to governmental authorities by Defendant FortiFi Financial, Inc. (formerly known as Energy Efficient Equity, Inc.), under California's Property Assessed Clean Energy ("PACE") Program (the "Class").  Also included within the Class is a subclass consisting of all Class members whose affected residential properties were or are located within the County of Los Angeles (the "County Subclass").  Excluded from the Class and the County Subclass are Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any corporate entity in which any Defendant has or had a controlling interest.

55.    The members of the Class and County Subclass are so numerous that joinder of all members is impracticable.  There are at least hundreds, if not thousands, of State and County residents who suffered substantially similar, fraudulent scams at the hands of fly-by-night, Criminal-Contractors like Eco that went door to door for several years.  While the exact number of Class members is unknown to Plaintiffs at this time, and can be ascertained only through appropriate discovery, Plaintiffs believe that there are at least hundreds of members in the both the proposed Class and the County Subclass.  Members of the Class and County Subclass may be identified and located from database records maintained by Defendants, and may be notified of the pendency of this action by electronic mail and/or regular mail, using the form of notice similar to that customarily used in class actions.

56.    Plaintiffs' claims are typical of Class members' and County Subclass members' claims, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law, as complained of herein.

57.    Plaintiffs will fairly and adequately protect the interests of all Class members and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

14

CLASS   ACTION   COMPLAINT

58.    Defendants have acted and refused to act on grounds that generally apply to the Class and the County Subclass, so that final injunctive and declaratory relief are appropriate respecting the Class and the County Subclass as a whole.

59.    Common questions of law and fact exist as to all members of the Class and County Subclass, and predominate over any questions solely affecting individual members of the Class. Among many questions of law and fact that are common among Class members are the following:

a.    whether Defendant Fortifi/E3 violated 18 U.S.C. § 1962 by knowingly and with deliberate recklessness reporting involuntary PACE assessments to the County as "voluntary" assessments, and ultimately collecting and enforcing the same against residents;

b.    the extent to which Defendants have known that Eco and other, recidivist Criminal-Contractors engaged in a pattern and practice of defrauding and impersonating State and County residents;

c.    whether Defendants have violated California's PACE Program statutes by imposing, collecting and enforcing PACE assessments which they know to ***not*** have been "voluntary" in fact;

d.    whether the due process clause of the Fourteenth Amendment requires that Plaintiffs and other Class members be afforded an evidentiary hearing or administrative appeal process for disproving the purportedly "voluntary" nature of their PACE assessments;

e.    whether the County has violated 42 U.S.C. § 1983 by failing to provide any process whatsoever, let alone "due process," for homeowners before imposing, collecting and enforcing PACE assessments which the County knows to be disputed as involuntary;

CLASS   ACTION   COMPLAINT

f.    whether Plaintiffs and the Class suffered damages as a result of Defendants' conduct, and the proper measure of such damages, which can be readily ascertained from records maintained by the Defendants; and

g.    whether Plaintiffs and the Class are entitled to permanent injunctive and/or declaratory relief.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation would make it difficult if not impossible for members of the Class to redress the wrongs done to them on an individual basis.  There will be no difficulty in the management of this case as a class action.

### COUNT I
**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1962(c)**
**(By The Class, Against Defendant FortiFi/E3)**

61.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation above as if fully set forth in this paragraph.

62.    Defendant FortiFi Financial, Inc. is a "person" within the meaning of 18 U.S.C. § 1961.

63.    Defendant County of Los Angeles is an "enterprise" within the meaning of 18 U.S.C. 1961.

64.    For several years running, Defendant FortiFi Financial, Inc. (f/k/a E3) has continually — through and including the present — devised and engaged in schemes to defraud California homeowners of their money and property by means of false and fraudulent pretenses and representations, including but not limited to knowingly and recklessly misrepresenting to the County that Plaintiffs' and other Class members' recorded PACE assessments were voluntary and contractual in nature as to the

16

CLASS  ACTION  COMPLAINT

homeowners, even as FortiFi/E3 has known and deliberately disregarded that the homeowners' PACE assessments were forged and involuntary, and that homeowners never agreed orally or in writing to any such PACE assessment.

65.    The County has substantially and continuously relied upon FortiFi to originate Plaintiffs' and other Class members' alleged PACE financings, to record the corresponding PACE assessments in the County's property tax rolls, and to employ reasonable consumer protection measures to guard against Criminal-Contractor fraud. Meanwhile, FortiFi itself has long been engaged in fraud by knowingly and falsely reporting fraudulent, involuntary PACE loans to the County as voluntary PACE assessments.

66.    Under its own ongoing, multi-year arrangement with the County, FortiFi has the power to cause the County to collect and enforce residential PACE assessments, or to cause the County to remove forged or otherwise involuntary PACE assessments from the County's property tax records. For several years running, and continuing through today, FortiFi has repeatedly and intentionally continued to cause the County to collect and enforce Plaintiffs' and other Class members' PACE assessments, which FortiFi knows to be forged and involuntary, and thus unlawful under the PACE Program itself, in violation of 18 U.S.C. §§ 1341 and 1343

67.    By reason of FortiFi's conduct as set forth herein, Plaintiffs and other Class members have been injured in their business and property by being forced to pay millions of dollars in additional property taxes to the County under threat of tax foreclosures, tax sales, and eviction from their homes. Plaintiffs have already been wrongfully forced to pay five figures in cash, and face an imminent and continuing threat of future cash payments totaling in the six figures.

CLASS  ACTION  COMPLAINT

**COUNT II**
**Violations of 42 U.S.C. § 1983**
**(By County Subclass Members, Against The County of Los Angeles)**

68.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation above as if fully set forth in this paragraph.

69.    Defendant County of Los Angeles is a "person" acting under the color of State and local statutes, ordinances, and regulations — including, but not limited to, California Streets and Highways Code ("SHC") §§ 5898.10, *et eq.*, and §§ 5900, *et seq.* — to assess, collect and enforce Plaintiffs' and other Class members' PACE assessments, which are forged, fraudulent, and unlawful under the California PACE program itself.  Such California laws require all PACE assessments to have been "voluntary" on the part of homeowners.

70.    The County, having in its possession and being aware of affirmative evidence that Plaintiffs' and other County Class members' existing PACE assessments were and are involuntary and never assented to on the part of the homeowner, has expressly declined to afford Plaintiffs or any other County Class member ***any*** procedure for challenging or disproving the purportedly "voluntary" nature of their PACE assessments, such as challenging the authenticity of PACE applications and Completion Certificates purportedly (and only electronically) submitted on their behalves by private third parties known to be engaged in a pattern and practice of criminal fraud.

71.    The County of Los Angeles and its Administrators are all aware of Criminal-Contractors, including ***but not limited to*** non-party Eco, that were engaged in similar, widespread frauds against innocent homeowners.  The County nevertheless continues to collect and enforce these PACE assessments and liens without any meaningful or reasonable inquiry into their alleged authenticity.  The County has accepted ***mere electronic submissions from private third parties*** as a basis for exercising governmental power to deprive California homeowners of their money and

CLASS   ACTION   COMPLAINT

real property, without so much as affording County Subclass members an evidentiary hearing or administrative appeal procedure to determine whether they were among the many, admittedly known victims of forged and fraudulent "PACE loans."

72.    Instead, the County knowingly and recklessly taxes all of its victimized, low-income (and mostly minority) homeowners under threats of tax foreclosures, evictions and forced sales of their primary residences.

73.    In doing all of the above in intentional, deliberately reckless, and unreasonable fashion, the County has subjected Plaintiffs and County Subclass members, and caused them to be subjected, to severe deprivations of money and property, without the "due process of law" guaranteed by the Fourteenth Amendment of the U.S. Constitution.

## COUNT III
### Declaratory Judgment under 28 U.S.C. § 2201
### (By The Class, Against All Defendants)

74.    Plaintiffs hereby repeat and re-allege each and every paragraph set forth above as though fully set forth herein.

75.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the Class are entitled to have this Court establish by declaration their rights and legal relations with Defendants concerning their existing PACE assessments.

76.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the Class are entitled to have this Court establish by declaration that their existing PACE assessments — including all paid portions, and all yet-to-be-paid portions — are unlawful, unenforceable, null and void as a matter of California statutory law because they were not "voluntary" in nature, as well as independently unlawful as a matter of federal constitutional law because such assessments were and are imposed, collected and enforced without the due process of law required by the Fourteenth Amendment.

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as Class Representatives, and the law firm of Finkelstein & Krinsk LLP as Class Counsel;

B.    Requiring Defendants to pay the actual (and under 18 U.S.C. § 1964(c), triple) damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Enjoining Defendants from assessing, imposing, collecting or enforcing Plaintiffs and other Class members' alleged PACE assessments;

D.    Declaring that Plaintiffs' and the Class's existing PACE assessments — including all paid portions, and all yet-to-be-paid portions — are unlawful, unenforceable, null and void as a matter of California statutory law because they were not "voluntary" in nature, as well as independently unlawful as a matter of federal constitutional law because such assessments were and are imposed, collected and enforced without the due process of law guaranteed by the Fourteenth Amendment.

E.    Ordering Defendants to take all actions necessary to bring each and every outstanding PACE assessment and property-tax obligation affected by the illegal acts alleged herein into compliance with the laws identified herein;

F.    Awarding Plaintiffs and other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs and expenses of this litigation; and

G.    Awarding such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury (conducted in person, not via the internet).

CLASS ACTION COMPLAINT

Dated: August 31, 2020

Respectfully submitted,

FINKELSTEIN & KRINSK LLP


By:  *s/ David J. Harris, Jr.*
David J. Harris, Jr., Esq.

djh@classactionlaw.com
501 West Broadway, Suite 1260
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Counsel for Plaintiffs, the Putative Class and County Subclass*

21

CLASS   ACTION   COMPLAINT