**O**

# United States District Court
# Central District of California

| | |
|---|---|
| HECTOR PORTALUPPI, et al., | Case № 2:20-cv-07959-ODW (RAOx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [50]** |
| v. | |
| FORTIFI FINANCIAL, INC. (f/k/a Energy Efficient Equity, Inc.), et al., | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Hector and Carmen Portaluppi bring a Second Amended Complaint ("SAC") against Defendants FortiFi Financial, Inc. (f/k/a Energy Efficient Equity, Inc.) and the County of Los Angeles ("LA County"). (SAC, ECF No. 49.) Defendants now move to dismiss five of the ten causes of action in the SAC. (Mot. Dismiss ("Mot." or "Motion"), ECF No. 50-1.) The Motion is fully briefed.[1] (Opp'n, ECF No. 52; Reply,

---

[1] Defendants request that the Court judicially notice a Notice of Assessment Contract recorded by the County of Los Angeles, a PACE Program Report and Handbook, and a Los Angeles County Taxpayers' Guide. (Req. for Judicial Notice ("RJN"), ECF No. 50-4.) Defendants' requested documents, however, are not pertinent to the Court's disposition of this matter. Accordingly, the Court **DENIES** as **MOOT** Defendants' RJN.

1 ECF No. 53.)  For the following reasons, Defendants' Motion is **GRANTED** in **PART**
2 and **DENIED** in **PART**.[2]

## II.    BACKGROUND[3]

4      California's Property Assessed Clean Energy Program ("PACE Program")
5 allows California homeowners to finance green-energy upgrades to their homes through
6 property assessments ("PACE Assessments") that are levied and collected by local
7 governments.  (SAC ¶ 29.)  The PACE Assessments are contractual in nature, and
8 homeowners must voluntarily agree in writing to have secured liens placed on their
9 property ("PACE Liens") in exchange for green-energy improvements.  (*Id.* ¶ 30.)

10      Local governments work with PACE Program Administrators to operate the
11 PACE Program.  (*Id.* ¶ 33.)  Contractors and homeowners typically submit applications
12 ("PACE Applications") to PACE Program Administrators proposing green-energy
13 upgrades to a home.  (*Id.* ¶¶ 33–35.)  PACE Program Administrators then make
14 unilateral decisions approving or denying these applications.  (*Id.* ¶ 34.)  After a PACE
15 Program Administrator approves an application and a contractor makes the approved
16 upgrades to a home, the PACE Program Administrator disburses the approved upgrade
17 costs to the contractor and records a PACE Lien on the property.  (*Id.* ¶¶ 35–38.)  The
18 local government then bills and collects annual payments from the homeowner as part
19 of the homeowner's property tax bill and remits these payments back to the PACE
20 Program Administrator.  (*Id.* ¶ 39.)

21      Plaintiffs are a married couple in their seventies residing in Los Angeles,
22 California.  (*Id.* ¶ 1.)  Defendant FortiFi is a PACE Program Administrator.  (*Id.* ¶ 33.)
23 Plaintiffs allege that around October 2018, non-party contractor Eco Tech prepared a
24 falsified PACE Application on Plaintiffs' behalf, forged their signatures, and sent the

---

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.
[3] Unless otherwise noted, all factual references and well-pleaded factual allegations derived from Plaintiffs' SAC are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

application to FortiFi.  (*Id.* ¶¶ 2–11.)  Fortifi approved this application, and Plaintiffs did not learn of this until October 2019, when they received their annual property tax bill from County.  (*Id.* ¶¶ 9–10, 51.)  Plaintiffs' property tax bill had increased from $1,431.84 per year to $8,815.74 per year, and Plaintiffs later discovered this increase was due to a new $69,000 secured PACE Assessment against their home.  (*Id.* ¶ 9.)

Plaintiffs allege that although they had proof that the PACE Application was falsified, LA County did not provide Plaintiffs with any means for contesting the PACE Assessment.  (*Id.* ¶¶ 11, 17–19.)  Plaintiffs therefore took out a loan at a 13 percent annual interest rate to cover the full amount due on their property tax bill.  (*Id.* ¶ 13.)

Based on the foregoing, Plaintiffs assert claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under federal law (Claims One through Three); elder abuse (Claim Four); violations of California's Unfair Competition Law (Claim Five); negligence (Claim Six); violations of 42 U.S.C. § 1983 (Claims Seven and Eight); breach of contract (Claim Nine); and declaratory judgment (Claim Ten).  (*See generally*, SAC.)  Defendants move to dismiss Claims One through Three, Seven, Eight, and Ten.  (*See generally*, Mot.)

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks

omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    DISCUSSION

### A.    Claims One Through Three: RICO Claims

Plaintiffs previously asserted their RICO claims in their First Amended Complaint ("FAC").  (FAC, ECF No. 25.)  The Court granted Defendants' motion to dismiss those claims with leave to amend because Plaintiffs failed to plead in detail FortiFi's involvement in racketeering activity.  (Order 8–9, ECF No. 45.)  In their SAC, Plaintiffs again allege their RICO claims, and Defendants again move to dismiss on the grounds that Plaintiffs still fail to adequately allege FortiFi's involvement in racketeering activity.  (*See* SAC; Mot. 20–24.)  Plaintiffs' Opposition does not address Defendants' arguments relating to the RICO claims.  (*See generally* Opp'n.)

Under the Local Rules of the Central District of California, a plaintiff's failure to file a timely opposition "may be deemed consent to the granting . . . of the motion." C.D. Cal. L.R. 7-12.  Although Plaintiffs in the present case have filed a timely opposition, their opposition is silent with respect to the RICO claims.  The motivating force behind Local Rule 7-12 therefore applies to this situation as it would to one where Defendants have moved only to dismiss the RICO claims and Plaintiffs have failed to file an opposition.  The Court therefore deems Plaintiffs to have conceded the merits of those arguments.  *See Sherman v. Schneider Nat'l Carriers, Inc.*, No. 18-CV-08609-

AB (JCX), 2019 WL 3220585, at *5 (C.D. Cal. Mar. 6, 2019) (deeming "Plaintiff's failure to address [the] argument as conceding its merits"); *Silva v. U.S. Bancorp*, No. 5:10-CV-01854-JHN, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (finding that, "Plaintiff concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition"). Accordingly, Defendants' Motion is **GRANTED** as to Claims One through Three.

**B.    Claims Seven, Eight, and Ten: Due Process Claims**

Plaintiffs allege that the statutes establishing the PACE Program, California Streets and Highways Code §§ 5898.10, *et seq.*, and §§ 5900, *et seq.*, authorize local governments to deprive private persons of their property without the procedural due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. (SAC ¶¶ 217–19.) Plaintiffs further allege that, pursuant to the PACE Program, LA County deprived them of their property without providing them an opportunity to be heard. (*Id.* ¶¶ 207–16.) Plaintiffs seek relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. (*Id.* ¶¶ 207–19, 225–27.)

To state a § 1983 claim, "a plaintiff must allege two essential elements, first, that a right secured by the Constitution and laws of the United States was violated, and second, that the deprivation was committed by a person acting under color of state law." *Teixeira v. Hanneman*, No. 17-CV-06673 PSG (KSx), 2018 WL 5903917, at *2 (C.D. Cal. May 30, 2018) (internal quotation marks omitted) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Municipalities and other local government units are among those "persons" to whom section 1983 liability applies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The parties do not dispute that LA County acted under color of state law. Rather, the parties disagree as to whether LA County violated Plaintiffs' rights under the Fourteenth Amendment's Due Process Clause.

*1.  The Imposition of a PACE Lien Constitutes State Action*

When the government deprives persons of their property, the Due Process Clause guarantees those persons "the opportunity to be heard 'at a meaningful time and in a

1   meaningful manner.'"   *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting
2   *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).   Defendants claim that LA County is
3   not a proper party, describing it as merely a "pass-through entity" that collects and
4   forwards assessment installments through the property tax bill. (Mot. 25–26.) But what
5   LA County does with the money it collects bears no significance on whether it must
6   provide constitutionally adequate procedural safeguards.[4]   Because the Due Process
7   Clause applies to state action, the real issue is whether LA County's recordation of a
8   PACE Lien and collection of PACE Assessments constitutes state action.

9          Courts have routinely characterized the imposition of liens—even those imposed
10   for the benefit of private parties—as state action.   *See Connolly Dev., Inc. v. Superior*
11   *Court*, 17 Cal. 3d 803, 815 (1976) ("There is no question but that the mechanics' lien
12   involves significant state action.   Not only is the lien governed by detailed statutory
13   provisions, but it becomes effective only upon recordation with the county recorder, an
14   official of the state . . . ."); *Adams v. Dep't of Motor Vehicles*, 11 Cal. 3d 146, 153
15   (1974) (holding that the imposition of a garageman's lien constitutes state action
16   because "the lien is expressly provided for by statute, its execution by sale is authorized
17   by statute, and a state agency oversees the sale and records the transfer of title").   Here,
18   a PACE Lien, like a mechanics' lien or a garageman's lien, is governed by detailed
19   statutory provisions.   *See* Cal. Sts. & High. Code §§ 5898.10, 5900.   Moreover, the act
20   of a county recorder renders a PACE Lien effective.   *See id.*   Therefore, the imposition
21   of a PACE Lien constitutes a state action subject to the Due Process Clause of the
22   Fourteenth Amendment, and Plaintiffs have sufficiently alleged that LA County,
23   pursuant to the PACE Program, authorized a PACE Lien to be placed on their home
24   and proceeded to collect on that lien.   (SAC ¶¶ 9–13, 207–19.)

25   _____

26   [4] Defendants' reference to *Elberg v. San Luis Obispo County*, 112 Cal. 316, 317 (1896) is inapposite.
     In *Eldberg*, the California Supreme Court held that a plaintiff could not sue the defendant county under
27   section 3819 of the Political Code to recover taxes that the county had collected on behalf of another
     entity.   *Id.* at 317–18.   Here, Plaintiffs are not seeking repayment of taxes under a more than one
28   hundred-year-old law.   Rather, Plaintiffs are suing for LA County's violation of their due process
     rights.

    *2.  The County Deprived Plaintiffs of a Protected Interest*

    "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  Defendants argue that because the County has not foreclosed on Plaintiffs' property or even issued a single notice of an intent to begin foreclosure proceedings, LA County has not deprived Plaintiffs of a property interest deserving of procedural due process protections.  (*See* Mot. 32–34.)

    However, even absent the initiation of foreclosure proceedings, the imposition of a PACE Lien on its own constitutes a deprivation of a protected property interest.  *Cf. Connolly Dev., Inc.*, 17 Cal. 3d at 813 (1976) (concluding that "the filing of a stop notice, as well as the recording of a mechanics' lien, deprives the landowner of a significant property interest").  Although a PACE Lien does not deprive an owner of the use of his or her property prior to a foreclosure, it severely hampers the owner's ability to sell or encumber the property.  *Cf. id.*  There is no doubt that a buyer would be less willing to purchase a property burdened by such a lien and, because a PACE Lien is a first-priority lien superior to even a mortgage lien, a bank would be less likely to approve a mortgage for such a property.  *See id.* at 812 ("Subsequent purchasers whose title will be subject to the lien may be unwilling to purchase a lawsuit with the land; lenders may refuse a loan on property subject to lien claims; the owner may in some cases be forced to pay a possibly invalid lien in order to clear title to his property in time for a pending transaction to be consummated.").  Here, the imposition of a PACE Lien in the amount of $69,000 on Plaintiffs' home clearly constitutes a significant deprivation of Plaintiffs' property rights subject to the Due Process Clause of the Fourteenth Amendment.

    *3.  Plaintiffs Adequately Allege a Due Process Violation*

    Because LA County has deprived Plaintiffs of a protected property interest, the remaining issue is whether LA County's procedures comply with constitutional

requirements.  An inquiry into LA County's procedures requires consideration of three distinct factors: (1) the private interests affected; (2) the risk of erroneous deprivation under current procedures and the probable value of alternative procedural safeguards; and (3) the government's interests.  *Mathews*, 424 U.S. at 335.

Plaintiffs plausibly allege that the *Mathews* factors weigh in favor of finding that the PACE Program and LA County's implementation of it violate the Fourteenth Amendment's Due Process Clause.  First, Plaintiffs point to a significant deprivation of property rights arising from the imposition of PACE Liens, often in the amounts of tens of thousands of dollars.  (SAC ¶ 120.)  Second, Plaintiffs allege that the County accepts easy-to-forge electronic signatures on PACE documents as "determinative and conclusive" of a homeowners' consent to the levying of PACE Assessments, leading to a high risk of erroneous deprivation.  (*Id.* ¶ 126.)  Plaintiffs cite instances where contractors have either falsified PACE documents or obtained signatures on those documents by fraud.  (*Id.* ¶¶ 51–52, 72–74.)  Moreover, Plaintiffs assert that the County does not verify that the requested green-energy improvements have actually been made before collecting on PACE Liens, and detail at least one instance where a PACE Lien was imposed for nonexistent improvements.  (*Id.* ¶¶ 83–85.)  Finally, Plaintiffs argue that the government can take additional steps to prevent erroneous deprivations without incurring a large cost, for example, by not relying exclusively on the assertions contained in electronic documents, or by requiring hearings when there is a dispute concerning the imposition of a PACE Lien.  (Opp'n 23–25.)

Defendants argue that because the PACE Assessment is essentially a tax, only a post-assessment hearing is required.  (Mot. 27–28.)  This argument is undermined by Defendants' own characterization of the PACE Assessment as contractual in nature, and Defendants' description of the County's role as a "pass-through entity." (Mot. 13–14.)  More importantly, because the PACE Assessments are immediately forwarded to PACE Program Administrators, their collection does not implicate the government's "substantial interest in protecting the public purse"—an interest courts have relied on

in upholding the sufficiency of post-assessment hearings.  *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018) (quoting *Flora v. United States*, 362 U.S. 145, 175 (1960)).

Defendants nevertheless make several arguments highlighting the burden that pre-assessment hearings would impose on LA County, which they claim outweigh the private interests at issue.  (Reply 10–14.)  However, the issue of whether Plaintiffs are entitled to a pre-assessment hearing is not dispositive as to Plaintiffs' claim.  Plaintiffs do not complain only of the lack of a pre-assessment opportunity to be heard.  For example, Plaintiffs contest the limited steps LA County takes to verify the authenticity of electronically filed PACE documents, which do not need to be notarized or contain a wet signature.  (SAC ¶ 126.)  Plaintiffs additionally allege that the PACE Program fails to provide any post-assessment procedure to contest the imposition of a PACE Lien.  (*Id.* ¶¶ 122, 215.)

Defendants assert that Plaintiffs could have appealed the imposition of their PACE Lien to a county board.  (Mot. 30–31.)  However, the law that Defendants cite permits a hearing only for the reassessment of the value of a home due to a change in ownership or new construction.  *See* Cal. Rev. & Tax. Code § 1605.5.  Because Defendants have cited no law contradicting Plaintiffs' assertion that LA County did not provide any procedure to contest the imposition of the PACE Lien, the Court accepts Plaintiffs' assertion as true.  *See Lee*, 250 F.3d at 688.

The Court need not, and does not, determine the minimum procedures the Due Process Clause requires in this context.  Because Plaintiffs plausibly allege that the Due Process Clause requires LA County to provide some sort of procedure to contest the imposition of a PACE Lien, and because they further allege that LA County provided no such procedure, Plaintiffs adequately state a claim for a violation of their procedural due process rights.  Accordingly, Defendants' Motion is **DENIED** with respect to Claims Seven, Eight, and Ten.

## V.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (ECF No. 50) is **GRANTED** with respect to Claims One through Three, and **DENIED** with respect to Claims Seven, Eight, and Ten.

**IT IS SO ORDERED.**

March 1, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**